# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 30, 2022

Lyle W. Cayce
Clerk

No. 20-11169

Ｕｎｉｔｅｄ Ｓｔａｔｅｓ ｏｆ Ａｍｅｒｉｃａ,

*Plaintiff—Appellee*,

*versus*

Ｄｅｖｏｒｉｓ Ｌａｍｏｎｔ Ｊａｃｋｓｏｎ,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:18-CR-637

Before Ｓｍｉｔｈ, Ｃｏｓｔａ, and Ｗｉｌｓｏｎ, *Circuit Judges*.

Ｇｒｅｇｇ Ｃｏｓｔａ, *Circuit Judge*:

When Devoris Jackson unlawfully possessed a firearm, our precedent did not treat his burglary convictions as violent felonies that could enhance his sentence under the Armed Career Criminal Act (ACCA). But by the time he was sentenced for the gun crime, the Supreme Court had rejected our view. The district court thus counted Jackson's burglary convictions as violent felonies. The principal issue on appeal is whether using the new precedent to enhance Jackson's sentence violated due process.

No. 20-11169

I

It is unlawful for felons to possess a firearm. 18 U.S.C. § 922(g)(1). Felon-in-possession convictions typically carry a maximum ten-year penalty. 18 U.S.C. § 924(a)(2). But the ACCA increases the penalty to a fifteen-year minimum if the defendant "has three previous convictions . . . for a violent felony." *Id.* § 924(e)(1). A "violent felony" is any crime punishable by more than one year in prison that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, [or] involves the use of explosives." *Id.* § 924(e)(2)(B).

The district court applied the ACCA at Jackson's sentencing— imposing the minimum sentence of fifteen years—after he pled guilty to possessing a firearm as a felon. The court treated Jackson's Texas aggravated robbery conviction and two Texas burglary-of-a-habitation convictions as the violent felonies compelling the enhanced sentence.

II

As he did in the district court, Jackson concedes that his Texas burglary-of-a-habitation convictions qualify as violent felonies under current precedent.[1] *See United States v. Herrold* (*Herrold II*), 941 F.3d 173, 177, 182 (5th Cir. 2019) (en banc), *cert. denied*, 141 S. Ct. 273 (2020). Jackson argues, however, that the Due Process Clause required the district court to instead apply our precedent as it existed when he committed the gun crime in August 2018.

---

[1] He challenges that caselaw only to preserve an attempt to seek its reversal in the Supreme Court.

No. 20-11169

Understanding Jackson's claim requires a brief history of our changing precedent on whether Texas burglary of a habitation is an ACCA predicate. When Congress named "burglary" a violent felony, it "had in mind a modern 'generic' view" of the crime. *Taylor v. United States*, 495 U.S. 575, 589 (1990). Generic burglary is the "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* at 599. Shortly before Jackson was caught in possession of the firearm, we held that Texas burglary of a habitation was broader than generic burglary because it reached defendants who formed intent to commit a crime after entering the building. *United States v. Herrold (Herrold I)*, 883 F.3d 517, 532–36 (5th Cir. 2018) (en banc), *vacated*, 139 S. Ct. 2712 (2019). That precedent was short-lived. The following year, the Supreme Court resolved a circuit split and held that generic burglary occurs regardless of when intent is formed. *Quarles v. United States*, 139 S. Ct. 1872, 1875 (2019). Because we were on the wrong side of the split, the Supreme Court returned *Herrold* to us. 139 S. Ct. 2712 (2019). Bound by *stare decisis*, we then held that Texas burglary of a habitation is generic burglary and thus is a violent felony. *Herrold II*, 941 F.3d at 177, 182. *Herrold II* was on the books when Jackson was sentenced.

Jackson contends that it was unconstitutional for the district court to apply the law as it existed when he was sentenced rather than when he committed the crime. He relies on the due process principle that guarantees notice of what conduct is criminal and the punishment that attaches to each crime. *See Johnson v. United States*, 576 U.S. 591, 595–96 (2015). One corollary of that notice requirement is a bar on the retroactive application of a judicial interpretation of a criminal law when the decision is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue." *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964).

The "unexpected and indefensible" qualifier recognizes that most judicial decisions apply retroactively. After all, an outright prohibition on

3

retroactive application "would place an unworkable and unacceptable restraint on normal judicial processes and would be incompatible with the resolution of uncertainty that marks any evolving legal system." *Rogers v. Tennessee*, 532 U.S. 451, 461 (2001).

What makes a judicial ruling "unexpected and indefensible"? The Civil Rights Era case that gave rise to this antiretroactivity doctrine is illustrative. In *Bouie v. City of Columbia*, the Supreme Court invalidated convictions of two African-American college students who were arrested for 'sitting in' at a whites-only lunch counter. 378 U.S. at 348–49. The students had been charged under South Carolina's criminal trespass statute, which prohibited "entry" onto another's property "after notice prohibiting [the] same." *Id.* at 349 n.1. South Carolina courts had long read the statute to require pre-entry notice. *Id.* at 356. The state supreme court nonetheless affirmed the students' convictions, holding that the law also criminalized remaining on another's property after being asked to leave. *Id.* at 350. That novel reading of the statute could not be applied retroactively, the Supreme Court of the United States held, because the state's preexisting law did not suggest that the students might be jailed for "sit[ting] quietly" in the restaurant. *See id.* at 348.

The hallmarks of the *Bouie* situation when a law cannot apply retroactively include stark divergence from the statutory text, departure from prior caselaw, inconsistency with the expectations of the legislature and law enforcement, and the criminalization of otherwise innocent conduct. *Bouie*, 378 U.S. at 355–56, 361–63.[2] Those hallmarks are absent here.

---

[2] Only one other time has the Supreme Court found a *Bouie* violation. *Marks v. United States*, 430 U.S. 188 (1977)—a decision better known for trying to explain which of many separate opinions in a decision is controlling, *see id.* at 192–94—barred the retroactive application of the obscenity definition announced in *Miller v. California*, 413 U.S. 15 (1973).

First and foremost, classifying Texas burglary of a habitation as a violent felony is not "clearly at variance" with the ACCA's text. *See Bouie*, 378 U.S. at 356. The ACCA defines "violent felony" to include "burglary." 18 U.S.C. § 924(e)(2)(B)(ii). Judges can debate whether this generic reference to "burglary" includes a burglary law that allows intent to be formed after entry, but a layperson reading the law would likely expect Texas burglary to be an ACCA predicate. *Contrast Bouie*, 378 U.S. at 355–56 (holding that extending South Carolina's trespassing statute to remaining on another's property after being asked to leave was inconsistent with the law's text barring only "entry" upon another's property). Treating Texas burglary as a violent felony did not read into the statute "an intention which the [ACCA's] words themselves did not suggest." *See id.* at 362 (quoting *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 86 (1820) (Marshall, C.J.)).

Nor was counting Jackson's burglary convictions as violent felonies "unexpected" in light of precedent. In fact, *Herrold I*'s fleeting holding—that Texas burglary of a habitation was not generic burglary—departed from a quarter century of Fifth Circuit caselaw. *Compare Herrold I*, 883 F.3d at 517, *with United States v. Silva*, 957 F.2d 157, 162 (5th Cir. 1992); *United States v. Constante*, 544 F.3d 584, 586–87 (5th Cir. 2008); *and United States v. Uribe*, 838 F.3d 667, 671 (5th Cir. 2016) (all considering Texas burglary of a habitation an ACCA predicate). *Herrold I* was a closely divided (8-7) *en banc* decision. And it clashed with other circuits' view that generic burglary includes burglaries with post-entry intent. *See United States v. Bonilla*, 687

---

*Miller*, which asked whether the materials lack "serious literary, artistic, political, or scientific value," punished conduct innocent under the prior "utterly without redeeming social value" test. *Marks*, 430 U.S. at 194. In the 45 years since *Marks*, the Supreme Court thrice has rejected *Bouie* claims. *See* Brian R. Means, Postconviction Remedies § 41:2 (2021) (reviewing those decisions and generally noting the narrowness of the doctrine).

F.3d 188, 193–94 (4th Cir. 2012) (finding Texas burglary generic and thus a "violent felony" under the ACCA); *see also United States v. Priddy*, 808 F.3d 676, 684 (6th Cir. 2015) (deeming Tennessee's similar burglary statute generic). That circuit split created a reasonable likelihood that the Supreme Court would resolve the disagreement. It soon did so. *Quarles*, 139 S. Ct. at 1872; *Herrold*, 139 S. Ct. at 2712 (vacating *Herrold I* and remanding for reconsideration in light of *Quarles*).

That the Supreme Court's resolution of a circuit split prompted the ruling Jackson calls "unexpected and indefensible" reveals bigger problems with his argument. It is difficult to see how a high court decision overruling an intermediate one could be an *unforeseeable* change in law; our decisions are always subject to Supreme Court review. And it is not even clear that applying *Herrold II* to Jackson was in any way retroactive because it was a later phase of the very case he says should control. At a minimum, it is not reasonable to treat a divided decision of an intermediate court like ours as providing the unalterable notice that *Bouie* contemplates. *Contrast Bouie*, 378 U.S. at 356–57 (noting that the Supreme Court of South Carolina's ruling upholding the trespass prosecution for the sit-in went against almost a hundred years of the state high court's having "uniformly emphasized the notice-before-entry requirement").

Finding a retroactivity problem when a high court overrules a lower one would undermine vertical precedent. It would mean that anytime the Supreme Court resolves a circuit split on the interpretation of a criminal statute in favor of the government, the high court's decision could not be applied to pending prosecutions in the circuit that had taken the pro-defendant position (it could not apply even to the Supreme Court defendant if the decision reversed circuit precedent that predated the defendant's crime).

We are not aware of any case ever so holding despite this being a common occurrence. Consider a Supreme Court decision from just a few years before *Quarles*. *Voisine v. United States*, 579 U.S. 686 (2016), likewise resolved a circuit split in favor of the government, holding that reckless domestic assault counts as a "misdemeanor crime of domestic violence" that prevents one from possessing a gun. At least two circuits (including ours) that had pre-*Voisine* caselaw requiring a mens rea higher than recklessness for similarly-worded provisions applied the Supreme Court's reasoning to cases already in the pipeline when *Voisine* issued. *See United States v. Burris* (*Burris I*), 920 F.3d 942, 952–53 (5th Cir. 2019), *vacated on other grounds*, 141 S. Ct. 2781 (2021); *United States v. Pam*, 867 F.3d 1191, 1207–08 (10th Cir. 2017).[3] The contrary idea—that due process prevents us from applying Supreme Court caselaw that overrides earlier circuit precedent to already-pending cases—would deprive the Supreme Court of its final say.

What we have said so far is enough to doom Jackson's due process claim. We also note that *Quarles* did not "make previously innocent conduct criminal." *See Proctor v. Cockrell*, 283 F.3d 726, 732 (5th Cir. 2002). Possessing a firearm with a prior felony conviction was a federal crime long before Jackson's offense. *See* 18 U.S.C. § 922(g)(1); *contrast Marks*, 430 U.S. at 191 (finding a due process violation because new definition of obscenity criminalized acts that were legal at the time of the challenged conduct).

None of the features of the egregious state court decision that led *Bouie* to find a due process violation exist here. And our court has never

---

[3] These cases' view that *Voisine*'s holding about *mens rea* also governed the ACCA's definition of "violent felony" requiring the "use . . . of physical force" was later rejected by the Supreme Court. *See Borden v. United States*, 141 S. Ct. 1817, 1825 (2021) (holding that a crime requiring only a *mens rea* of recklessness does not qualify as a "violent felony" under ACCA's element clause). Our point, however, is that neither *Burris* nor *Pam* saw a problem with applying *Voisine* to crimes that occurred before *Voisine* issued.

No. 20-11169

recognized a *Bouie* violation. *See United States v. Kay*, 513 F.3d 432, 441–46 (5th Cir. 2007); *United States v. Martinez*, 496 F.3d 387, 389–90 (5th Cir. 2007) (both rejecting *Bouie* claims). Nor have we seen a case from any court holding that the Supreme Court's abrogation of circuit precedent cannot be applied to conduct occurring before the high court ruled. This case should not be the pioneer in either of those categories. It was neither "unexpected" nor "indefensible" when the Supreme Court abrogated an 8-7 decision of our en banc court, siding with circuits that had held generic burglary did not require intent to commit a crime contemporaneous with entry into the building. Applying that same interpretation of the law to crimes occurring in this circuit during the brief interregnum between *Herrold I* and *Quarles* was neither unexpected nor indefensible.

It did not violate due process to count Jackson's burglary convictions as violent felonies.

### III

The district court thus properly sentenced Jackson as an armed career criminal if his Texas aggravated robbery conviction is a third violent felony. This conviction qualifies under the ACCA's elements clause if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i).

On this issue, Jackson is aided rather than hindered by a recent Supreme Court decision that abrogated some of our caselaw. A crime falls within the elements clause only if it requires the defendant to act with purpose or knowledge. *Borden*, 141 S. Ct. at 1834 ("Offenses with a *mens rea* of recklessness do not qualify as violent felonies under ACCA . . . [because] [t]hey do not require . . . the active employment of force against another person."); *see United States v. Greer*, 20 F.4th 1071, 1076 (5th Cir. 2021) (recognizing *Borden* as an intervening change in the law abrogating our

No. 20-11169

inconsistent precedent).  Jackson points out that one predicate for Texas aggravated robbery—robbery-by-injury, *see* TEX. PENAL CODE § 29.02(a)(1)—allows conviction based on mere recklessness. *United States v. Garrett*, 24 F.4th 485, 488–89 (5th Cir. 2022).  It follows under the categorical approach, he contends, that no Texas aggravated robbery conviction is a volent felony.

Normally Jackson might have a point; courts usually look at the elements of the entire statute to determine if all iterations of the crime have the required force element.  *Borden*, 141 S. Ct. at 1822.  But when a statute is divisible into multiple crimes, the court may look to "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of."  *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016).  Those documents show that the predicate for Jackson's aggravated robbery was robbery-by-threat, *see* TEX. PENAL CODE § 29.02(a)(2), which does require a *mens rea* higher than recklessness.[4] *Garrett*, 24 F.4th at 491 (holding that "intentionally or knowingly threatening or placing another in fear of imminent bodily injury or death plainly constitutes the 'threatened use of physical force' under the ACCA").

Jackson's reliance on the insufficient *mens rea* of robbery-by-injury thus depends on his showing that the Texas simple robbery statute is indivisible and must be viewed as a whole.  But we recently reaffirmed that the robbery statute is divisible and creates two distinct crimes.  *Garrett*, 24

---

[4] Jackson's judicial confession and the corresponding indictment show that his predicate offense was robbery-by-threat.  Both documents explain that Jackson "did . . . intentionally and knowingly threaten and place [the victim] in fear of imminent bodily injury and death."  These documents closely track the language of the robbery-by-threat statute and do not mention the bodily injury required for a robbery-by-injury conviction.

F.4th at 489–90.  Because the modified categorical approach shows that Jackson was convicted of the qualifying predicate of robbery-by-threat, it does not matter that a different predicate is not considered a violent felony.

*Garrett* addressed only a simple robbery conviction.  But as common sense suggests, the fact that Jackson committed an aggravated robbery does not transform his violent felony into a nonviolent one. *United States v. Powell*, No. 18-11050, 2022 WL 413943, at *2 n.3 (5th Cir. 2022) (unpublished) ("[R]obbery-by-threat, whether simple or aggravated, is a violent felony under the ACCA.").  Aggravated robbery requires a simple robbery predicate plus an aggravating circumstance such as serious bodily injury, the use or exhibition of a deadly weapon, or a vulnerable victim.  Tex. Penal Code § 29.03(a).  When the underlying robbery—here robbery-by-threat—has as an element "the use, attempted use, or threatened use of physical force against the person of another," the aggravating circumstance is irrelevant for ACCA purposes.  To establish the underlying simple robbery, the state had to prove a crime that falls within the ACCA's elements clause.

Jackson's aggravated robbery conviction is also a violent felony.

***

We AFFIRM.